Doris **HERNDON**, Appellant,

v.

**UNITED STATES of America**,
Appellee.

No. 73–1609.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1973.

Decided Jan. 24, 1974.

Steele Hays, Little Rock, Ark., for appellant.

Robert G. Burke, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON and ROSS, Circuit Judges, and SMITH,* Senior District Judge.

GIBSON, Circuit Judge.

Plaintiff, Mrs. Doris Herndon, appeals from the District Court's [1] denial of an injunction to enjoin the United States from selling real property owned by plaintiff's husband and levied upon by the United States for unpaid wagering taxes owed by her husband. We affirm the denial of the injunction.

Plaintiff asserts that the federal government cannot sell the real property titled solely in her husband's name due to her alleged property interest under the Arkansas homestead exemption law.[2] We disagree.

Plaintiff has been married to Edward J. Herndon since 1967 and has resided with him at 1300 East Maryland, North Little Rock, Arkansas, since 1969. Title to this real property is held in the husband's name alone, and the Government does not contest the fact that the real property is the couple's homestead under Arkansas law. The United States has a lien against the property of the plaintiff's husband in the amount of $28,519.-74 for unpaid wagering taxes.[3] On July 27, 1973, the United States issued a notice of seizure on the above-described real estate pursuant to its levy and proceeded by nonjudicial steps to foreclose its lien by selling the real property at a public auction on August 14, 1973. On August 8, 1973, plaintiff filed this action asking the District Court to enjoin the sale, since the Arkansas homestead exemption law purportedly grants the wife a property interest in the homestead, even though owned by her husband alone, which property interest assertedly precludes a sale to satisfy a federal tax lien. In an order dated August 13, 1973, the District Court denied plaintiff's request for an injunction, but stayed the sale pending appeal. Plaintiff promptly appealed.

■ The only issue on appeal is whether the plaintiff can assert whatever homestead rights she has under Arkansas law and the facts of this case to preclude the United States from selling the real property owned solely by her husband.[4]

■ Federal courts must *first* determine what property or rights to property an individual has under state law in applying any federal revenue act. The reason for examining state law is to ascertain what property or property rights the taxpayer holds to which a tax lien can attach. Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). For example, the Government concedes that if the plaintiff and her husband had held the real property as tenants by the entirety un-

---

* The Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Hon. G. Thomas Eisele, United States District Judge, Eastern District of Arkansas.

2. Ark. Const. art. 9, § 3 reads:
   *Homestead exemption from legal process —Exceptions.*—The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity.

3. Edward J. Herndon was contesting this alleged liability at the time appellant's brief in this case was filed.

4. Appellant also argues that the sale would violate procedural due process under the Fifth Amendment, since she would not be a party to the nonjudicial proceeding, the auction sale. The Government correctly argues that a sale of the described real estate would only convey whatever "right, title, and interest" that Mr. Herndon might have under state law. Mrs. Herndon's rights and interest in the real property, if any, would *not* be conveyed, and therefore she would neither be a proper party nor would her due process rights be violated.

der Arkansas law, no federal tax lien could attach to that property, unless and until the taxpayer (husband) becomes the sole survivor of the entirety estate. *See, e. g.*, United States v. Hutcherson, 188 F.2d 326 (8th Cir. 1951).

Under Arkansas law, it would have been possible for the plaintiff and her husband to have held the real estate in tenancy by the entirety. *See* United States v. 339.77 Acres of Land, 240 F. Supp. 545, 548 (W.D.Ark.1965) (and cases cited therein). Plaintiff makes no contention that the real estate was held in tenancy by the entirety.

Homestead exemption laws, however, have presented difficult problems of analysis. Some courts have viewed them as creating a property interest; others have not. One commentary states:

> Nevertheless, there is a conflict in the cases as to whether a tax lien is valid upon a homestead interest. It has been held that the states cannot carve out homestead exemptions from the effect of the Federal tax liens. The resolution of this issue *may* depend upon whether there is involved a single interest of the taxpayer who is subject to tax liability, or whether both spouses have an interest while only one is under a tax liability.

9 Mertens, Law of Federal Income Taxation § 54.52 at 205 (1971) (footnotes omitted) (emphasis added).

The Internal Revenue Code has a specific section covering property exempt from a federal levy. It reads:

> (c) No Other Property Exempt.—Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy

other than the property specifically made exempt by subsection (a).[5]

26 U.S.C. § 6334(c).

The Commissioner has promulgated a regulation briefly explaining 26 U.S.C. § 6334(c) which states:

> (c) *Other Property*. No other property or rights to property are exempt from levy except the property specifically exempted by Section 6334(a). No provision of a State law may exempt property or rights to property from levy for the collection of any Federal tax. Thus, property exempt from execution under State personal or homestead exemption laws is, nevertheless, subject to levy by the United States for collection of its taxes.

Treas.Reg. § 301.6334–1(c) (1954).

The Code and particularly the regulation, therefore, take the view that only the federal exemption statute exempts property from a federal levy. A necessary corollary to this view is that even if state laws do create a property interest pursuant to a homestead exemption law, the United States can still levy upon that property. The cases, however, take differing views.

The Code and ancillary regulation is supported by all of the case law except that of the Tenth Circuit. In Broday v. United States, 455 F.2d 1097 (5th Cir. 1972), the Government levied upon a community property checking account for the satisfaction of an antenuptial federal tax debt of the wife. The taxpayer argued that the community property statute of Texas exempted community property from antenuptial debts and that this exemption statute "gives a property right to the husband which

---

5.  26 U.S.C. § 6334(a) reads in part:
Enumeration.—There shall be exempt from levy—
   (1) Wearing apparel and school books. * * *;
   (2) Fuel, provisions, furniture, and personal effects. * * *;
   (3) Books and tools of a trade, business, or profession. * * *;

   (4) Unemployment benefits. * * *.
   (5) Undelivered mail. * * *.
   (6) Certain annuity and pension payments. * * *.
   (7) Workmen's compensation. * * *.
   (8) Salary, wages, or other income. * * *.

transcends the federal tax law." Broday v. United States, *supra* at 1100. The Fifth Circuit held:

> We think that the taxpayer must fail in his argument that [the community property exemption statute of Texas] should be characterized in a different manner than an exemption statute. * * * It appears clear * * * that the right of the United States to enforce its liens does not depend upon state laws which regulate the rights of creditors generally and does not depend upon whether the "exemption" label is attached to the particular statute in question.

Broday v. United States, *supra* at 1101.

The Fifth Circuit had earlier adopted the same position in Shambaugh v. Scofield, 132 F.2d 345 (5th Cir. 1942). In rejecting the contention that a homestead is immune from forced sale to satisfy a federal income tax lien, the Fifth Circuit held:

> The Federal statute authorizes the seizure and sale of real estate to satisfy unpaid income taxes when sufficient personalty is not found. * * * Homesteads are not exempted. * * * These statutes, enacted to effectuate a constitutional power, are the supreme law of the land. If they are in conflict with State law, constitutional or statutory, the latter must yield.

Shambaugh v. Scofield, *supra* at 346 (citations omitted).

The Ninth Circuit concurs with the Fifth Circuit. United States v. Heffron, 158 F.2d 657, 659 (9th Cir. 1947), held that a homestead exemption prescribed by state law is ineffective against a federal tax lien. That view was reiterated by the Ninth Circuit in the recent case of United States v. Overman, 424 F.2d 1142 (9th Cir. 1970). The taxpayer in *Overman* agreed that state exemption laws are ineffective against a federal tax lien, but argued the community property statute of the State of Washington, which generally exempts the community property from

liability for a husband's premarital debts, is more than an exemption statute and is a "rule * * * of property law [creating] a limitation on the extent and quality of his ownership rights under state law." United States v. Overman, *supra* at 1145. The court held that even assuming the taxpayer's argument concerning the community property rule was correct, all that the federal lien statute "requires is that the interest be 'property' or 'rights to property.'" United States v. Overman, *supra* at 1145. It further stated that "[i]t is of no statutory moment how extensive may be those rights under state law, or what restrictions exist on the enjoyment of those rights." United States v. Overman, *supra* at 1145.

The Eighth Circuit is in agreement with the Fifth and Ninth Circuits. Citing Shambaugh v. Scofield and United States v. Heffron, this court held "that as against federal tax liens, homestead exemptions prescribed by state laws, are of no effect." United States v. Heasley, 283 F.2d 422, 427 (8th Cir. 1960) (footnote omitted).

Plaintiff places strong reliance on United States v. Hershberger, 475 F.2d 677 (10th Cir. 1973). The Government agrees that the dicta on the superiority of a homestead property interest under Kansas law could provide support for plaintiff's position, but contends *Hershberger* was wrongly decided and urges us to apply *Heasley* instead of *Hershberger*.

■■ We think that *Heasley* and the Fifth and Ninth Circuits' views correctly interpret the effect of a state homestead exemption as against a federal tax lien. According to *Hershberger*, if a state's homestead laws confer a present property interest, instead of creating merely a privilege or exemption, then the United States cannot levy upon that present property interest. The Tenth Circuit is, so far, alone in this view. We think the sounder view in this area of conflicting approaches is that state exemption laws—even if the state, through case interpretation, statute, or

constitutional provisions, characterizes its homestead exemption statute as creating a present property interest—do not preclude the United States from levying upon and selling the taxpayer's interest in the property. The buyer at the sale, however, takes the foreclosed interest in the property subject to any rights under state law on homesteads that may exist.

We reach this conclusion for several reasons. First, Treas.Reg. § 301.6334–1(c) states that state exemption statutes have no validity in relation to the federal levying statute. Second, *Scofield* properly recognizes that the federal levying statute should be considered the "supreme law of the land" in relation to state exemption statutes. To hold otherwise would allow states to create statutorily or otherwise present property interests in homesteads so as to allow a homestead to be exempt from a federal tax levy. The collection of federal taxes in this instance should be prior to any rights of the state to exempt its citizens from federal taxing power. Third, the United States has provided for certain categories of exempt properties under 26 U.S.C. § 6334(a), which exemptions are exclusive and do not include a homestead exemption. Congress, but not this court, may, if it wishes, determine that citizens of all states should possess a homestead exemption free from federal tax levy.

Of course, according to our analysis, we have not determined whether the Arkansas homestead exemption law creates a property interest in the plaintiff. The resolution of that issue is not necessary for this case. The Government here is only claiming the right to sell Mr. Herndon's "right, title, and interest in the instant property, leaving any purported· interest held by Mrs. Herndon unim-

paired." We agree that the Government is selling Mr. Herndon's real estate subject to Mrs. Herndon's rights.[6] It may well be under Arkansas law that the buyer at the auction sale of this real estate takes subject to Mrs. Herndon's homestead rights.[7] On the other hand, the buyer at the auction may take free from any homestead right of the wife or minor children, if the federal taxing and exemption statutes, which do not exempt homesteads, are seen as applicable to rights of competing parties after a federal tax sale. That issue is not before us for decision.

█ We think it advisable as a matter of fairness under the circumstances of this case that the Government in selling this real estate should advise all prospective purchasers that the real property is being sold subject to any homestead interest that Mrs. Herndon may have under Arkansas law. The possible purchasers should also be advised of the litigation in this case.

The District Court's denial of the injunction is affirmed.

ROSS, Circuit Judge (concurring).

I concur in Judge Gibson's opinion and agree with his explication of the law on the narrow issue before us. I do so reluctantly, because I think the result reached is not a satisfactory one for either the United States, the taxpayer, or the appellant. The United States may now proceed to sell the subject real estate but must advise any and all prospective purchasers of the claim of the appellant under the homestead laws of Arkansas. At best the purchaser of the property is buying a lawsuit with the appellant and the sales price will likely be diminished by the uncertainty of the title. This diminished sales price is bad

---

**6.** The Notice of Public Auction Sale explicitly states:

TITLE OFFERED: Only the right, title, and interest of Edward J. Herndon in and to the property will be offered for sale.

**7.** *See, e. g.,* Maloney v. McCullough, 215 Ark. 570, 221 S.W.2d 770 (1949); Scoggin v.

Hudgins, 78 Ark. 531, 94 S.W.2d 684 (1906); M'Loy v. Arnett, 47 Ark. 445, 2 S. W. 71 (1886); Johnson v. Turner, 29 Ark. 280 (1874). We, however, express no view on what rights Mrs. Herndon may have against the purchaser of her homestead.

for both the United States, and for the taxpayer.

I fail to understand why the United States in this situation insisted upon a nonjudicial sale with all its attendant problems when it could have followed the procedure set forth in 26 U.S.C. § 7402 and § 7403 and foreclosed the lien in a federal court action thereby determining the interest of all parties in and to the property and delivering clear title to the purchaser. One is left with the suspicion that the government officials involved were more interested in an immediate sale than in the amount realized therefrom and that they were not particularly concerned with the rights of third parties.