## CATHERINE R. CRAIG v. MADA M. BAUMGARTNER AND OTHERS.[1]

No. 29,634.

February 23, 1934.

[1]Reported in 254 N. W. 440.

*Edgerton, Dohs & Edgerton,* for appellant.
*Lamberton & Lamberton* and *Clarence Hengel,* for respondents.

*DEVANEY, Chief Justice.*

Action to have a contract for deed absolute on its face declared to be a mortgage.

On or about July 24, 1909, one Baumgartner entered into a contract for deed with plaintiff, Catherine Craig. Under the terms of the contract, Baumgartner agreed to sell and convey to the plaintiff certain property which he then owned upon the payment by her of $5,500. Plaintiff entered into possession of the premises and, it is claimed, has continued since to occupy the same as her homestead. Her husband occupied the premises with her until his death in 1931. In February, 1916, about seven years after making the original contract, plaintiff became in default in the payments. She owed still $2,200 under the contract. Plaintiff's husband, entirely apart from the aforementioned transaction, was at that time, February, 1916, indebted to Baumgartner in the sum of $2,500. On February 19, 1916, plaintiff surrendered the contract to Baumgartner and in lieu thereof entered into a new contract whereby Baumgartner agreed to convey the aforementioned premises upon the payment of $4,700. This new and larger amount represented the unpaid balance on the original 1909 contract and the amount of the husband's separate debt to Baumgartner. Plaintiff's husband signed this new contract as a witness but not otherwise. Plaintiff subsequently paid a substantial amount under the new 1916 contract and then became in default. She offers in her pleadings to pay such amount as may be necessary to complete payment of the old 1909 contract. Baumgartner died in 1929, and in 1932 the representatives of his estate duly served on plaintiff the proper statutory notice to cancel this new 1916 contract. Plaintiff instituted this suit to enjoin the defendants from so doing on the grounds that the same is an equitable mortgage. The trial judge

made findings and ordered judgment for defendants. From an order denying her motion for a new trial plaintiff appeals.

In 1916 when plaintiff surrendered the old 1909 contract back to Baumgartner she did so voluntarily but without any accompanying written instrument. The surrender was made merely by manual tradition. The land covered by the contract was alleged to be plaintiff's homestead. 2 Mason Minn. St. 1927, § 8340, provides:

"* * * if the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other alienation thereof, shall be valid without the signatures of both husband and wife."

At the time of this attempted surrender plaintiff had paid more than one-half of the purchase price. As a vendee under this contract for deed she had an equitable interest in the homestead, if such it was, to the extent of payments made. This interest she could not alienate without the signature of her husband thereto. Such signature was not procured. So the 1909 contract was never validly surrendered and is still in force today inasmuch as there appears never to have been any attempt to cancel the 1909 contract according to the statutory procedure for so doing. In our view, the execution of the later 1916 contract was of no effect and is mere surplusage. Its execution represented a misconceived notion of the status of the parties. Where a person holds a contract for deed which has not been canceled or validly surrendered, the taking of another contract on the same land is of no effect. The argument that the second contract is a mortgage when the first one is still in force defeats itself. Obviously, where a grantor conveys property and then subsequently, due to a mistaken notion, conveys the same property again to the same party, the second conveyance is not a mortgage in any sense. This seems to dispose of the case at bar. Plaintiff is suing to have an invalid instrument declared to be a mortgage, and, since the same is invalid and of no effect, her action will not lie.

As against the view that we are here taking, defendant contends:

(1) That, since plaintiff's husband signed the new 1916 con-

tract as a witness, this was sufficient indication of his assent to an alienation of the homestead; (2) that plaintiff did not plead or assert in the lower court that the 1909 contract was still in force and so cannot now shift to a new theory and attempt to assert the invalidity of the surrender of the 1909 contract as a defense; (3) that L. 1927, c. 222, § 2, relating to foreclosures or cancelations of contracts for deed, bars plaintiff's claim that the surrender of the contract was not valid; (4) that plaintiff is estopped; and (5) that plaintiff is guilty of laches.

These contentions present the issues in the case.

■ The signature of the husband as a witness on the new 1916 contract, an instrument of absolutely no effect, cannot be said to be such a signature as is contemplated by our statute relating to homesteads. 2 Mason Minn. St. 1927, § 8340, above quoted. The signature necessary is one consenting to the surrender back of the 1909 contract, not one consenting to the second (1916) contract. The surrender, not the execution of the later contract, was the invalid conveyance and the one which required the husband's signature for its validity. Whether this signature as a witness worked an estoppel against plaintiff will be considered later.

■ It is true that the case was tried in the lower court on the theory that the 1909 contract had been validly surrendered and that the 1916 contract was a good instrument. Defendants claim that the issue of the invalidity of the surrender of the 1909 contract was not pleaded and so cannot now be asserted. It is true that such is not distinctly pleaded and that there is a shift of theories on plaintiff's part in this court. Nevertheless, we think that in this case a shift of theories is permissible. Even if plaintiff had not argued as she now does, this court could on its own motion have declared the 1916 contract invalid and the 1909 contract still in force because of the invalidity of this surrender. The object of the homestead statute is to protect the large class of home owners throughout the state and to prevent one spouse from disposing of the home, which often represents all of a family's worldly possessions, without the other's consent. This case is analogous to the situation where an action is brought on an illegal contract. So

strong is the public policy preventing the enforcement of an illegal contract that where such is done the court can and has, on its own motion, declared the contract to be illegal and dismissed the action even though neither party pleaded the illegality. Oscanyan v. Arms Co. 103 U. S. 261, 26 L. ed. 539; Goodrich v. N. W. Tel. Exch. Co. 161 Minn. 106, 112, 201 N. W. 290; Jacobson v. Barnes, 176 Minn. 4, 8, 222 N. W. 341; Hackett v. Hammel, 185 Minn. 387, 389, 241 N. W. 68. The surrender in the instant case was void and contravened a statute behind which there is the strong public policy that does not permit one spouse to alienate any interest in the homestead without the consent of the other. So strong is this policy that, pleaded or not pleaded, shift of theories or no, where it clearly appears that a homestead has been aliened without the consent of the other spouse, this court will allow the defense in the same manner as though the action had been brought upon an illegal contract and the illegality had not been pleaded or there had been a shift to that ground on appeal.

L. 1927, c. 222, § 2, provides:

"Any person, persons, copartnership or corporation as vendee holding any contract for the purchase or sale of real estate which said contract has been heretofore foreclosed or canceled or attempted to be foreclosed or canceled, and the mortgage registration tax was not paid, said person, persons, copartnership, or corporation shall have until July 1, 1927, to assert any rights they may have under and by virtue of said contract, or be forever barred from asserting the same, * * *."

This statute, defendants argue, prevents plaintiff's questioning the validity of the surrender of the 1909 contract. We cannot accede to this proposition. We believe there was not here such a "foreclosure" or "cancelation" as is contemplated by this statute. From the language used, it seems clear that this statute was intended only to apply to cases where the contract for deed was foreclosed or canceled pursuant to the statutory procedure for so doing. In this case the mortgage registry tax was not paid, but this voluntary surrender was not a foreclosure or cancelation.

■ Defendants contend that plaintiff is estopped from asserting the invalidity of the surrender of the 1909 contract because of the fact that her husband signed as a witness on the 1916 contract. In support the following cases are cited: Stevens v. Dennett, 51 N. H. 324; Baker v. Humphrey, 101 U. S. 494, 25 L. ed. 1065; Equitable L. & S. Co. v. Lewman, 124 Ga. 190, 52 S. E. 599, 3 L.R.A. (N.S.) 879. These are for the most part cases where an owner of an interest in land, by signing as a witness or acknowledging the deed of such land, is held estopped to claim at a later date any interest therein. We think these cases are good law but that they do not apply to the situation here. In the case at bar the signature of plaintiff's husband as a witness was not affixed to any instrument purporting to convey the interest plaintiff had under the 1909 contract. As far as appears, there was no such written instrument. Rather the signature was on an instrument which apparently was executed on the theory that the prior conveyance (surrender of 1909 contract) was valid. This would be a somewhat remote basis for working an estoppel against the plaintiff. To so hold we would have to hold first that plaintiff's husband would have been estopped had he litigated this case. There was no showing that plaintiff's husband, when signing as a witness, either was fully cognizant of all the facts or else acted in reckless disregard thereof. The burden is on defendants to prove an estoppel, one of the elements of which is a wilful misrepresentation. This signature of plaintiff's husband as a witness could not be said to be such a wilful misrepresentation in the absence of a showing that he knew the nature of the invalidity of the surrender of the 1909 contract and, deliberately intending to mislead, signed the 1916 contract as a witness in spite of that, or else that he acted without caring to know the facts. In the absence of a showing, such fact will not be presumed. Since the plaintiff's husband himself would not be estopped, it follows *a fortiori* that plaintiff is not estopped.

■ Laches may be asserted as a defense against one who wilfully sleeps on his rights to another's detriment. A party's ignorance of his rights, however, is an excuse for his laches. 4 Pomeroy, Eq.

Juris. (4 ed.) p. 3434, § 1447. It is hard to see why, how, and in what manner plaintiff is guilty of laches; but, even if she were so, we feel that her obvious ignorance of her rights was an excuse therefor.

Defendants' claim that plaintiff is barred under 2 Mason Minn. St. 1927, §§ 9573-9574, we need not consider. The same would only become material if we were to hold the second (1916) contract to be a mortgage, but has no bearing since we do not so hold. Even if the second contract were a mortgage, it is doubtful whether this case would fall within that statute of limitations, for, under any theory, at the time of the 1916 contract the parties did not sustain the relationship of mortgagee and mortgagor. There is no question of the application of payments made since 1916, because there is only one valid contract, and whatever payments have been made apply on that.

Under the present state of the record we feel that there should be a new trial because the case was tried in the lower court on the theory that the 1909 contract had been validly surrendered. If defendants can show a valid cancelation of the 1909 contract, that the property was not plaintiff's homestead, or that there was a written instrument signed by plaintiff's husband accompanying the surrender of the 1909 contract, they should be given a chance to do so. In the event that they are not able so to do, defendants should recover nothing, and, upon payment of the balance due under the 1909 contract, if any, plaintiff should be entitled to the land in fee. Even if defendants are able to show a valid surrender of the 1909 contract and if it is found that the 1916 contract is a mortgage, we do not think that under our statute it can be a mortgage for more than the amount of the unpaid purchase price on the 1909 contract.

Reversed and new trial ordered.

### On Petition To Amend Order.

On April 27, 1934, the following opinion was filed:

*DEVANEY, Chief Justice.*

Plaintiff petitions the court to amend its order herein and to instruct the trial court that plaintiff should be permitted to amend

her pleadings so as to seek specific performance of the original (1909) contract.

The allowance of such amendment is a matter properly directed to the trial court's discretion. This court will assume that the question will be decided in accordance with established rules of practice with a view to seeing that substantial justice is accomplished and "in the furtherance of justice." Erickson v. Bjertness, 167 Minn. 323, 325, 209 N. W. 32.

Petition denied.

